# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00074-CR

## Ex parte Jalen Highsmith

### FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-20-301961-W, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## O P I N I O N

In January 2021, Jalen Highsmith was indicted for the offense of murder. *See* Tex. Penal Code § 19.02. After being indicted, Highsmith filed a pretrial application for writ of habeas corpus requesting release on a personal bond or a reduction in his bond. *See* Tex. Code Crim. Proc. art. 11.08. The trial court denied Highsmith's writ application. Highsmith appeals the trial court's ruling. We will affirm the trial court's order denying Highsmith's application for writ of habeas corpus.

## BACKGROUND

Early in the morning on November 7, 2020, Mario Robinson and his friends were in the parking lot of a restaurant waiting for their to-go order. While Robinson and his friends waited, a sport utility vehicle drove into the lot and parked next to the group. The vehicle was being driven by a woman, and another woman was sitting in the front passenger seat. Two men were sitting in the back seat of the vehicle. One of the men got out while carrying a rifle, walked toward Robinson and his friends, and demanded money from the group. Robinson complied and

handed the man money. Shortly thereafter, the second man got out of the vehicle while carrying a pistol. The second man also approached Robinson and his friends and removed a necklace from Robinson's neck. At that point, the man with the rifle shot Robinson. The two men returned to the vehicle, and the vehicle left the scene.

After the vehicle left, one of Robinson's friends called 911 to report the robbery and shooting. EMS personnel responded to the scene and pronounced Robinson dead. Investigating officers obtained surveillance footage of the incident from the restaurant. Approximately twenty minutes after the incident, the two female occupants of the vehicle called 911 to report that they had been with the robbers at the restaurant but were now alone and waiting in a school parking lot. Investigating officers drove to the lot to obtain statements from the women. The women alleged that Highsmith and another man committed the robbery and that the other man discharged his weapon during the robbery. The investigating officers obtained an arrest warrant and then arrested Highsmith on November 11, 2020. Following his arrest, Highsmith's bail was set at $1,000,000, and he was subsequently indicted for murder on January 28, 2021. That same day, Highsmith filed discovery requests.

Approximately four months later, Highsmith filed a pretrial application for writ of habeas corpus, seeking to be released on a personal bond and alleging that the State was not ready for trial within the 90-day deadline for felony offenses set out in article 17.151 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 17.151. In response, the State announced at a hearing that it was ready for trial and had been ready for trial at the time of the 90-day deadline based on the evidence that it had already gathered and explained that it could have presented its case without any additional evidence. After the hearing, the trial court issued an

2

order denying his request to be released on a personal bond but ordered that his bail be reduced to $650,000.

In November 2021, Highsmith filed another application for writ of habeas corpus, requesting that he be released on a personal bond or, alternatively, that the amount of his bail be further reduced. In his application, Highsmith asserted that the State was not ready for trial by the 90-day deadline for reasons different from those previously expressed. Specifically, Highsmith noted that he made discovery requests under the Michael Morton Act ("Act") and alleged that the State could not be ready because it had not fully disclosed evidence in response to his requests by the 90-day deadline. *See id.* arts. 17.151, 39.14. The State countered that it was ready for trial because the indictment was timely and because it had repeatedly announced that it had been ready for trial by the expiration of the 90-day deadline. In addition, the State explained that it had already disclosed hundreds of items of evidence supporting its case, including recordings of the offense.

During a writ-application hearing, Highsmith argued that the State had not timely disclosed key pieces of evidence, including a medical examiner's report. The trial court admitted Highsmith's exhibits regarding evidence that had been disclosed after the 90-day deadline. In response, the State asserted that it had been ready for trial and that it disclosed evidence to Highsmith. The trial court admitted the State's exhibit showing a list of evidence that had been disclosed to Highsmith and when those items were disclosed, including offense reports and other items disclosed before the 90-day deadline. Regarding a medical examiner's report, the State acknowledged that a report had not been prepared by the 90-day deadline but explained that that type of report can take time to prepare. Further the State related that it had autopsy photos and

witness statements describing how the victim died and could have called the medical examiner as a witness without a report to describe the cause of death.

After the hearing, the trial court denied Highsmith's requested habeas relief and issued the relevant findings of fact and conclusions of law summarized below:

Findings of Fact

At the May 2021 hearing, the State's attorney repeatedly announced that the State was ready for trial and had been ready within the 90-day statutory time period.

Applicant was indicted within the statutory 90-day period.

At the May 2021 hearing, the State proffered a spreadsheet listing the State's evidence—approximately 244 items—that had been disclosed to the defense. The State's attorney declared the availability of key State's witnesses, photographs, medical records, lab reports, and video evidence depicting the offense, within the statutory time period.

In his subsequent habeas application, Applicant further argued that the State did not disclose other evidence within the 90-day period.

The State demonstrated its readiness for trial by announcing "ready," obtaining an indictment within 90 days, and showing that key eyewitnesses and evidence were available within the statutory time period.

Applicant has not demonstrated that the State was missing any evidence within the 90 days that was "so vital that the State was not ready for trial" without it.

The Court finds that the State has met its initial burden to make a prima facie showing that it was ready for trial within the applicable 90-day time period.

The Court finds that Applicant has not offered sufficient rebuttal of the State's prima facie case; the Court finds that the State was timely ready for trial.

Conclusions of Law

Applicant has supplied the Court with no authority indicating that the State did not demonstrate its readiness for trial under circumstances substantially similar to this case.

Applicant has not provided authority supporting his assertion that he is entitled to release under article 17.151 whenever the State has not completely provided all

4

available discovery . . . within the 90-day period. Applicant has not supplied authority connecting article 17.151's requirements to the State's discovery obligations under Tex. Code Crim. Proc. art. 39.14.

Applicant has not provided applicable legal authority showing an obligation under article 17.151 for the State to . . . demonstrate full article 39.14 discovery compliance—within the 90-day statutory period.

Highsmith appeals the trial court's order denying his requested habeas relief.

## STANDARD OF REVIEW

An applicant for a writ of habeas corpus bears the burden of proving facts entitling him to relief. *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993). On appeal, "[w]e review a trial court's decision to deny relief on a claim that the State violated article 17.151 for an abuse of discretion." *Ex parte Craft*, 301 S.W.3d 447, 448 (Tex. App.—Fort Worth 2009, no pet.); *see Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (noting that "pretrial habeas, followed by an interlocutory appeal, is an 'extraordinary remedy'" (quoting *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010))). "An abuse of discretion does not occur unless the trial court acts 'arbitrarily or unreasonably' or 'without reference to any guiding rules and principles,'" *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)), or unless the trial court's decision "falls outside the zone of reasonable disagreement," *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). "In reviewing the trial court's decision, we view the evidence in the light most favorable to the ruling." *Ex parte Craft*, 301 S.W.3d at 448-49. "We afford almost total deference to the trial court's determination of historical facts supported by the record, especially when the fact findings are based upon credibility and demeanor." *Ex parte Estrada*, 573 S.W.3d 884, 891 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

**DISCUSSION**

In two issues on appeal, Highsmith presents several related arguments asserting that the trial court's order should be reversed. First, Highsmith argues that the trial court erred by failing to grant his requested habeas relief because it failed to read the 90-day deadline found in article 17.151 in conjunction with the requirements of the Act when determining whether the State was ready for trial. Next, Highsmith asserts that the trial court should have granted his relief regardless of whether those two sets of statutes are read together because the State was not ready for trial within the 90-day deadline. Specifically, Highsmith contends that the State had not secured by the 90-day deadline a medical examiner's report, which he asserts is a key piece of evidence.

**The Act and Readiness Under article 17.151**

As set out above, Highsmith contends in his first issue that article 17.151 should be construed along with provisions of the Act. The relevant portion of article 17.151 provides as follows:

> A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within:
>
> > (1) 90 days from the commencement of his detention if he is accused of a felony[.]

Tex. Code Crim. Proc. art. 17.151, § 1(1).

Under article 39.14 of the Act, the State is obligated "as soon as practicable after receiving a timely request from the defendant" to "produce and permit the inspection and the

6

electronic duplication, copying, and photographing, by or on behalf of the defendant" of the following items:

> [A]ny offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.

*Id.* art. 39.14(a). To satisfy this obligation, "[t]he state may provide to the defendant electronic duplicates of any documents or other information described by this article." *Id.* "[B]efore trial, each party shall acknowledge in writing or on the record in open court the disclosure, receipt, and list of all documents, items, and information provided to the defendant under this article." *Id.* art. 39.14(j).

On appeal, Highsmith invokes the doctrine of in pari materia and asserts that article 39.14 of the Act and article 17.151 are in pari materia and should be construed together because they both address the same subject matter. More specifically, Highsmith contends that both statutes govern what it means for the State to be ready for trial and that the more recently enacted article 39.14 modified what it means for the State to be "ready" under article 17.151 by establishing requirements for pretrial discovery. In other words, Highsmith contends that as part of showing readiness under article 17.151, the State must now show that it provided requested discovery to the defendant by the 90-day deadline. Further, Highsmith argues that the Act's purpose of preventing wrongful convictions would be undermined by a system that allows the State to "casually announce 'ready' for trial" but withhold discovery because it would force defendants to choose between proceeding to trial without effective assistance of counsel or

7

enduring additional confinement after requesting a continuance. Highsmith also asserts that if prosecutors can disregard timely disclosure requirements before the expiration of the 90-day-readiness deadline, then the State will be "running a patchwork discovery system in which some defendants get more justice than others," resulting potentially in wrongfully convicted individuals. For these reasons, Highsmith contends that "release on bond pursuant to Article 17.151 is the appropriate remedy to correct the effect of the State's disregard of its Article 39.14 duties on a defendant's pretrial confinement." Regarding this case, Highsmith argues that he was entitled to his requested habeas relief because the State failed to disclose within 90 days of his arrest certain material discovery items in response to his request and, therefore, because the State was not ready for trial.

Resolution of Highsmith's habeas claim involves statutory construction, which is a question of law appellate courts review de novo. *See Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). "In construing a statute, we give effect to the plain meaning of its language, unless the statute is ambiguous or the plain meaning would lead to absurd results that the legislature could not have possibly intended." *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015); *see Ex parte Vela*, 460 S.W.3d 610, 612 (Tex. Crim. App. 2015). "In ascertaining the plain meaning of a word, we read words and phrases in context and construe them according to the rules of grammar and usage." *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008); *see* Tex. Gov't Code § 311.011 (addressing common and technical usage of words in construing statutes). "In determining plain meaning, we employ the rules of grammar and usage, and we presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible." *Liverman*, 470 S.W.3d at 836.

The doctrine of in pari materia is used to implement the "full legislative intent, by giving effect to all laws and provisions bearing on the same subject." *Cheney v. State*, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988) (quoting 53 Tex. Jur. 2d *Statutes* § 186 (1964)). The doctrine is codified in section 311.026 of the Code Construction Act, *see State v. Allen*, 346 S.W.3d 713, 715 (Tex. App.—Austin 2011, pet. ref'd), which provides as follows:

> (a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.
>
> (b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

Tex. Gov't Code § 311.026.

Although Highsmith contends that the two sets of statutes govern the same general subject matter, that assertion is not supported by the language of the statutes or the structure of the Code of Criminal Procedure. The two statutes are found in different portions of the Code that address disparate subject matters. *Cf. Allen*, 346 S.W.3d at 717 (concluding that two statutes were not in pari materia because, among other reasons, they were "not contained in the same legislative act"). Article 17.151 is located in the portion of the Code pertaining to bail and, as discussed above, imposes a duty on trial courts to release defendants on personal bonds or lower their bail when the State is not ready for trial within 90 days of the defendant being arrested in a felony case. *See* Tex. Code Crim. Proc. art. 17.151. Readiness simply "refers to the State's preparedness for trial." *Ex parte Anderson*, Nos. 01-20-00572—00574-CR, 2021 WL 499080, at *19 (Tex. App.—Houston [1st Dist.] Feb. 11, 2021, no pet.) (mem. op., not designated for publication). In contrast, section 39.14 of the Act is found in the chapter

9

of the Code dealing with discovery in criminal cases and requires, as discussed above, the State to disclose to defendants certain types of discovery. Tex. Code Crim. Proc. art. 39.14. Accordingly, the portions of the statutes relevant to this appeal require different actions by different actors. *See id.* arts. 17.151, 39.14; *see also Allen*, 346 S.W.3d at 717 (explaining that statutes were not in pari materia because, among other reasons, statutes prohibited different conduct).

Unquestionably, the Act broadened "criminal discovery for defendants, making disclosure the rule and non-disclosure the exception," and required discovery disclosure "'as soon as practicable.'" *Watkins v. State*, 619 S.W.3d 265, 277, 278 (Tex. Crim. App. 2021) (quoting Tex. Code Crim. Proc. art. 39.14); *see also State v. Heath*, 642 S.W.3d 591, 597 (Tex. App.—Waco 2022, pet. filed) (noting that State is now required to provide discovery "in a timely manner in response to a discovery request" and can no longer wait until it decides to prepare case for trial). However, nothing in the plain language of the Act or in article 17.151 indicates that this production obligation to the defendant is a component of the State's own readiness for trial under article 17.151 or hints that the requirements should be read in conjunction with one another or conflict with each other. *See* Tex. Code Crim. Proc. arts. 17.151, 39.14; *see also* Tex. Gov't Code § 311.026 (explaining that doctrine of in pari materia applies when there is conflict between two statutes that needs to be resolved). Although the Act imposes pretrial disclosure obligations on the State, the failure to comply with disclosure by a certain date, without more, is not indicative of whether the State itself was ready for trial by that date, which is the focus of article 17.151. *See* Tex. Code Crim. Proc. arts. 17.151, 39.14. Further, when presenting his appellate claims, Highsmith does not refer to any cases, and we have been unable to find any, supporting his assertion that the discovery obligations found in the Act factor into a readiness

determination. *Cf. State v. Mancuso*, 919 S.W.2d 86, 87 (Tex. Crim. App. 1996) (observing that "[i]t is the duty of the Legislature," not of courts, "to make laws"). In fact, one of our sister courts of appeals has highlighted that the legislature chose not to include a specific compliance date in the Act. *See Heath*, 642 S.W.3d at 597.

Additionally, nothing in either set of statutory provisions indicates that the failure to comply with the discovery disclosures required under the Act should result in the relief Highsmith requests. *See* Tex. Code Crim. Proc. arts. 17.151, 39.14. When determining what type of relief should be given for noncompliance with the Act, appellate courts have explained that the appropriate remedies include granting continuances or excluding evidence not timely produced. *See Heath*, 642 S.W.3d at 597-98 (observing that trial courts may fashion remedy for noncompliance with Act, including granting continuance or excluding evidence not timely produced); *In re State*, 605 S.W.3d 721, 726, 727 (Tex. App.—Houston [1st Dist.] 2020, orig. proceeding) (observing that "exclusion of evidence" is "sanction that is generally accepted as the remedy for violations of article 39.14," collecting cases supporting that proposition, and noting that "there are limits as to the sanctions that can be imposed for violations of the Michael Morton Act").

In light of the preceding, including the plain language of the two sets of statutes, we cannot conclude that the district court abused its discretion by determining that compliance with the discovery obligations under the Act is not a component of the State's readiness under article 17.151. *See* Tex. Code Crim. Proc. arts. 17.151, 39.14. For these reasons, we overrule Highsmith's first issue on appeal.

11

**State's Readiness Under article 17.151**

In his second issue on appeal, Highsmith contends that the trial court abused its discretion by refusing to grant his requested habeas relief because the State was not ready for trial. More specifically, Highsmith asserts that the State could not have been ready for trial by the deadline found in article 17.151 because the State had not secured a report from the medical examiner, which he characterizes as a key piece of evidence.

Although the language of "[a]rticle 17.151 is mandatory," *Ex parte Lanclos*, 624 S.W.3d 923, 927 (Tex. Crim. App. 2021), it mandates only "that a defendant . . . be released upon [the following] two conditions": "the State's unreadiness for trial on the criminal action for which an accused is being held" and "the accused ha[ving] been detained pending trial for ninety days, if accused of a felony," *Ex parte Gill*, 413 S.W.3d 425, 430 (Tex. Crim. App. 2013); *see also Ex parte Lanclos*, 624 S.W.3d at 927 (discussing requirements of article 17.151). Even though readiness refers to the State's preparedness for trial, it does not require that the "trial could have actually begun at that time," and "there is no bright line rule on how much or what type of evidence the State must have available to be prepared for trial." *Ex parte Anderson*, 2021 WL 499080, at *19.

Initially, the State has the burden to make a prima facie showing that it was ready for trial within the 90-day deadline. *Ex parte Smith*, 486 S.W.3d 62, 65 (Tex. App.—Texarkana 2016, no pet.); *Ex parte Ragston*, 422 S.W.3d 904, 906 (Tex. App.—Houston [14th Dist.] 2014, no pet.). To satisfy this obligation, the State may either announce that it is ready within the 90-day period or announce retrospectively that it had been ready within that period. *Ex parte Smith*, 486 S.W.3d at 65; *Ex parte Ragston*, 422 S.W.3d at 907. Additionally, "the existence of a charging instrument is an element of State preparedness." *Kernahan v. State*, 657 S.W.2d 433,

12

434 (Tex. Crim. App. 1983). If the State makes the required showing, then the defendant has the burden to rebut the showing. *Ex parte Brosky*, 863 S.W.2d 775, 778 (Tex. App.—Fort Worth 1993, no pet.). If the defendant fails to make a sufficient rebuttal, the trial court may conclude in its discretion that the State was ready for trial timely. *Id.* A defendant can rebut a prima facie showing by demonstrating, among other things, "that the state did not have a key witness or piece of evidence available by the last day of the applicable time limit so that the state was not ready for trial within that time limit." *Jones v. State*, 803 S.W.2d 712, 718 (Tex. Crim. App. 1991) (quoting *Barfield v. State*, 586 S.W.2d 538, 542 (Tex. Crim. App. 1979)).

As set out above, Highsmith was arrested on November 11, 2020, and he was indicted for murder on January 28, 2021, which was fewer than 90 days after his arrest. *See* Tex. Code Crim. Proc. art. 17.151. Moreover, the State announced at the hearings that it was ready for trial and had been ready for trial by the 90-day deadline. Accordingly, we conclude that the trial court did not abuse its discretion by determining that the State met its burden of making a prima facie showing that it was ready within the 90-day deadline. *See Ex parte Smith*, 486 S.W.3d at 65; *see also Jones*, 803 S.W.2d at 718 (determining that trial court could reasonably have construed prosecutor's "announcement of ready to relate back to the filing of the indictment" and that "[s]uch announcement would suffice to establish a prima facie showing of readiness well within the 90 day limit").

Moreover, although Highsmith asserted and the State conceded that a medical examiner's report had not been disclosed within the 90-day deadline, the State also explained that the report did not yet exist and that it had autopsy photos and witness statements describing how the victim died and could have called the medical examiner even in the absence of a report. Further, the State explained that by the 90-day deadline it had gathered as evidence, among other

13

things, recordings of the offense, photographs, and witness statements describing the offense, and the State related that several eyewitnesses were willing to testify. Additionally, the trial court admitted a report during the hearing showing evidence that had been obtained before the 90-day deadline.

In light of the preceding, we cannot conclude that the trial court abused its discretion by determining that Highsmith failed to rebut the presumption that the State was ready for trial. *Cf. Ex parte Anderson*, 2021 WL 499080, at \*20, \*21 (noting applicant's argument that State had failed to provide video recordings and blood-test results in driving-while-intoxicated case but concluding that applicant failed to rebut presumption of readiness where State explained that it was prepared to prove applicant's guilt through witness testimony alone); *Ex parte Jackson*, Nos. 03-17-00301—00302-CR, 2018 WL 1598919, at \*4 (Tex. App.—Austin Apr. 3, 2018, no pet.) (mem. op., not designated for publication) (concluding that applicant failed to rebut presumption where there was no showing that "records were so vital that the State was not ready for trial without them"). For those reasons, we also conclude that the trial court did not abuse its discretion by denying Highsmith's request for habeas relief and, therefore, overrule his second issue on appeal.

## CONCLUSION

Having overruled both of Highsmith's issues on appeal, we affirm the trial court's order denying his application for writ of habeas corpus.

14

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   June 30, 2022

Publish